[No. S086153. Oct. 18, 2001.]

THE PEOPLE, Plaintiff and Appellant, v.
DOMINIC D. SLAYTON, Defendant and Respondent.

**COUNSEL**

Dennis L. Stout, District Attorney, Grover D. Merritt and William Lee, Deputy District Attorneys, for Plaintiff and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Rhonda L. Cartwright-Ladendorf, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiff and Appellant.

Paul F. Pfingst, District Attorney (San Diego), Robert C. Phillips and Thomas F. McArdle, Deputy District Attorneys, for the California District Attorneys Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Steven A. Torres, under appointment by the Supreme Court, for Defendant and Respondent.

## OPINION

**CHIN, J.**—The Sixth Amendment to the United States Constitution (Sixth Amendment) provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." This right to counsel attaches " 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " (*United States v. Gouveia* (1984) 467 U.S. 180, 188 [104 S.Ct. 2292, 2297, 81 L.Ed.2d 146].) After it both attaches and is invoked, any incriminating statement the government deliberately elicits from a defendant in counsel's absence is inadmissible at that defendant's trial. (*Massiah v. United States* (1964) 377 U.S. 201, 205-206 [84 S.Ct. 1199, 1202-1203, 12 L.Ed.2d 246]; *In re Wilson* (1992) 3 Cal.4th 945, 950 [13 Cal.Rptr.2d 269, 838 P.2d 1222].)

In *McNeil v. Wisconsin* (1991) 501 U.S. 171, 175 [111 S.Ct. 2204, 2207, 115 L.Ed.2d 158] (*McNeil*), the United States Supreme Court declared that the Sixth Amendment right to counsel is "offense specific." "That is to say, it attaches to offenses as to which adversary judicial criminal proceedings have been initiated—and to such offenses alone. [Citation.]" (*People v. Clair* (1992) 2 Cal.4th 629, 657 [7 Cal.Rptr.2d 564, 828 P.2d 705].) Thus, "[e]ven after an accused has counsel with regard to a particular charged offense, he or she may be questioned by police following *Miranda*[1] advisements with respect to any uncharged offense. [Citation.] Incriminating statements pertaining to those uncharged offenses, as to which the Sixth Amendment right has not yet attached, are admissible at a subsequent trial of those offenses. [Citations.]" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1313 [65 Cal.Rptr.2d 145, 939 P.2d 259].)

A majority of the Court of Appeal in this case, like many lower federal courts, held that an exception to the right to counsel's offense-specific nature exists where the uncharged offenses are "inextricably intertwined" factually with the charged offenses. The Court of Appeal majority further held that the facts of this case come within the exception and that, because the police questioning of defendant Dominic D. Slayton violated his Sixth Amendment right to counsel, the trial court properly suppressed his statements and dismissed charges of burglary and violating Vehicle Code section 10851.[2] We granted review to consider this holding.

After we granted review, the United States Supreme Court held that the Sixth Amendment right to counsel does not extend to uncharged offenses

---

[1]*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

[2]Further undesignated statutory references are to the Vehicle Code.

that are inextricably intertwined factually with charged offenses. (*Texas v. Cobb* (2001) 532 U.S. 162 [121 S.Ct. 1335, 149 L.Ed.2d 321] (*Cobb*)). Following the high court's decision, as we must, we find that as to the burglary charge, the trial court erred in suppressing defendant's statements and ordering dismissal. However, based on the People's concession, we find that as to the charge under section 10851, the trial court did not err in suppressing defendant's statements and ordering dismissal.[3]

## FACTUAL BACKGROUND

According to the testimony at defendant's preliminary hearing, on February 26, 1998, police in Upland, California, which is in San Bernardino County, responded to a report of a residential burglary. Several items, including car keys, were missing from the burglarized residence.

On March 1, 1998, Riverside County Deputy Sheriff Mark Bostrom stopped a car in Riverside County that had been reported stolen; defendant was driving. After arresting defendant, Bostrom contacted the Upland Police Department, which responded that defendant may have been involved in an Upland burglary and that the car he was driving was "part of the burglary." On March 3, 1998, in Riverside County, defendant was arraigned on and pleaded not guilty to charges of violating Vehicle Code section 10851, subdivision (a), driving without a valid license (Veh. Code, § 12500, subd. (a)), and receiving stolen property (Pen. Code, § 496). The court appointed the public defender to represent defendant on these charges. An information was later filed in Riverside County charging defendant with the same crimes. The section 10851 charge alleged "that on or about March 1, 1998, in the County of Riverside," defendant "did wilfully and unlawfully drive or take" a car without the owner's consent with intent to deprive the owner of title to and possession of the car.[4]

On March 6, 1998, Upland Police Detective Kenneth Bonson went to the Riverside County jail to interview defendant about the Upland burglary and car theft. Before the interview, defendant explained he had been arraigned in Riverside County and, although he had been told he would be appointed an attorney, he had not yet spoken to an attorney and did not know whether one had been appointed. Also before the interview, Bonson read defendant his *Miranda* rights. Defendant waived his *Miranda* rights and admitted he

---

[3]Because defendant has not raised any claim under the California Constitution, we need not, and do not, address any state constitutional issue.

[4]The record in the Court of Appeal did not contain copies of the complaint and information filed in Riverside County. We obtained copies of these documents and, having given appropriate notice to the parties, take judicial notice of them. (See Evid. Code, §§ 459, subd. (c), 455 subd. (a).)

participated in the Upland burglary and took a set of keys during it. He also admitted he later "came back . . . to the area of the [burglarized] residence" and took the car. Bonson "believe[d]" defendant said he took the car two days after the burglary.

On May 6, 1998, defendant was charged by information in San Bernardino County with one count of residential burglary and one count of violating section 10851, subdivision (a). The information alleged that defendant violated section 10851 in that "[o]n or about March 10, 1998," he "did unlawfully drive and take" a car without the owner's consent with the intent to deprive the owner of title to and possession of the car. Defendant filed a combined motion to suppress his statements to Bonson and to dismiss the charges, asserting in part that Bonson's questioning violated his constitutional rights. The trial court granted the motion and dismissed the charges.

A divided Court of Appeal affirmed the trial court's decision. As we have noted, the majority first held the Sixth Amendment right to counsel that attaches to charged offenses extends to uncharged offenses that are "inextricably intertwined" factually with the charged offenses. The majority then concluded the uncharged Upland burglary was inextricably intertwined with the section 10851 charge that was pending in Riverside County when Bonson interviewed defendant, because the two crimes involved the same victim and location and defendant obtained the key he used to steal the car during the burglary. The dissenting justice in the Court of Appeal disagreed that on the facts here, defendant's Sixth Amendment right to counsel required suppression of his confession in the San Bernardino County prosecution.

DISCUSSION

As we previously noted, the United States Supreme Court's decision in *Cobb* definitively rejected the exception the Court of Appeal majority applied in this case. In *Cobb*, during initial investigation of a residential burglary and the simultaneous disappearance of two people who lived at the burglarized residence, the defendant admitted committing the burglary but denied knowledge of the disappearances. (*Cobb, supra,* 532 U.S. at p. 165 [121 S.Ct. at p. 1339].) After his confession, he was indicted for the burglary, appointed counsel, and released on bond. (*Id.* at p. 165 [121 S.Ct. at p. 1339].) Over a year later, the police took the defendant into custody upon learning he had admitted killing one of the missing persons during the burglary. (*Id.* at p. 165 [121 S.Ct. at p. 1339].) After being read, and waiving, his *Miranda* rights, the defendant confessed to murdering both of the missing persons during the burglary. (*Id.* at p. 165 [121 S.Ct. at p.

1339].) He was later convicted of capital murder. (*Id.* at p. 166 [121 S.Ct. at p. 1340].) The Texas Court of Criminal Appeals reversed the conviction, holding that the Sixth Amendment right to counsel attaches to uncharged offenses that are " 'very closely related factually' " to charged offenses, that the defendant's capital murder charge was " 'factually interwoven with the burglary,' " and that his confession was therefore inadmissible because the police obtained it in violation of his Sixth Amendment right to counsel by questioning him after he accepted appointed counsel in the burglary case. (*Id.* at p. 167 [121 S.Ct. at p. 1340].)

The United States Supreme Court held that the Texas Court of Criminal Appeals erred in extending the Sixth Amendment right to counsel to uncharged offenses that are " ' "closely related to" ' or ' "inextricably intertwined with" ' " charged offenses. (*Cobb, supra,* 532 U.S. at p. 173 [121 S.Ct. at p. 1343].) The court emphasized that it "meant what it said" in *McNeil*: "the Sixth Amendment right [to counsel] is 'offense specific.' " (*Cobb, supra,* 532 U.S. at p. 164 [121 S.Ct. at p. 1339].) Thus, it "attaches only to charged offenses . . . ." (*Id.* at p. 163 [121 S.Ct. at p. 1343].) The court explained that "the Constitution does not negate society's interest in the ability of police to talk to witnesses and suspects, even those who have been charged with other offenses." (*Ibid.*) " '[T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities.' [Citation.]" (*Id.* at p. 171 [121 S.Ct. at p. 1342].)

Although refusing to extend the Sixth Amendment right to counsel beyond "charged offenses" to " ' "closely related" ' " or " ' "inextricably intertwined" ' " uncharged offenses, the court in *Cobb* also explained: "[T]he definition of an 'offense' is not necessarily limited to the four corners of a charging instrument. In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) [(*Blockburger*)], we explained that 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' [Citation.] We have since applied the *Blockburger* test to delineate the scope of the Fifth Amendment's Double Jeopardy Clause, which prevents multiple or successive prosecutions for the 'same offence.' [Citation.] We see no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel. Accordingly, we hold that when the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged,

would be considered the same offense under the *Blockburger* test." (*Cobb, supra,* 532 U.S. at p. 173 [121 S.Ct. at p. 1343], fn. omitted.) "In this sense, we could just as easily describe the Sixth Amendment as 'prosecution specific,' insofar as it prevents discussion of charged offenses as well as offenses that, under *Blockburger,* could not be the subject of a later prosecution." (*Id.* at p. 173, fn. 3 [121 S.Ct. at p. 1343].)

Based on the People's concession, we conclude that under *Cobb* and *Blockburger,* the trial court did not err in finding that as to the section 10851 charge, Bonson's questioning violated defendant's Sixth Amendment right to counsel. In their supplemental brief addressing *Cobb*'s effect on this case, the People concede that "[a]s *presently charged,*" the section 10851 offenses charged in San Bernardino and Riverside Counties "are identical" and *"are* the same offense, the March 1, 1998 'driving' in Riverside County."[5] The People also concede that *Cobb* therefore "preclude[s] admission of any comment from [defendant] regarding the March 1, 1998 offense 'in a trial of that offense.'" Based on these concessions, we find that as to the section 10851 charge, the trial court correctly ordered suppression of defendant's statements and dismissal of the charge.[6]

In reaching this conclusion, we decline to consider two issues regarding the section 10851 charge that the People raise in their supplemental brief. The People argue that despite the improper questioning, the trial court "still erred" in dismissing the section 10851 offense because "independent evidence existed of its commission," aside from defendant's statements. We decline to consider this argument because the People never made it before filing their supplemental brief. (See Cal. Rules of Court, rule 29(b)(1).) On the contrary, according to the Court of Appeal majority, the People "conceded during oral argument [in the Court of Appeal] that there was insufficient evidence to proceed without defendant's statement." The People also

---

[5]In making this concession, the People "assume scrivener's error where the [San Bernardino County] information reads 'March 10, 1998.'"

[6]Contrary to the concession in their supplemental brief, in their opening brief, the People suggested defendant failed to establish that his Sixth Amendment right to counsel attached in the Riverside County prosecution before the Bonson interview. However, in their opening brief in the Court of Appeal, the People asserted that before Bonson interviewed defendant in the Riverside County jail, defendant was arraigned on the charges in Riverside County, he "plead[ed] not guilty to all counts, and the Public Defender was appointed." Similarly, in their petition for review in this court, the People asserted that "[t]he Riverside County Public Defender was appointed on *March 3, 1998,*" before Bonson's interview on March 6. In the trial court, the People twice conceded that defendant's Sixth Amendment right to counsel in fact had attached in the Riverside County prosecution. Consistent with these representations, the majority opinion in the Court of Appeal stated that the Bonson interview occurred "while defendant was in jail, following arraignment and appointment of counsel, on a car theft charge in Riverside County." Given the People's representations and their failure to petition for rehearing in the Court of Appeal, we decline to consider this issue. (See Cal. Rules of Court, rule 29(b)(2).)

argue that *"if the **February 28, 1998 'taking' were charged**"* instead of "the March 1, 1998 'driving,' " then the section 10851 charges in San Bernardino and Riverside Counties "would be separate offenses." ▇ As a general rule, we do not issue advisory opinions indicating " 'what the law would be upon a hypothetical state of facts.' " (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 171 [188 Cal.Rptr. 104, 655 P.2d 306]; see also *People v. Chadd* (1981) 28 Cal.3d 739, 746 [170 Cal.Rptr. 798, 621 P.2d 837] ["We will not . . . adjudicate hypothetical claims or render purely advisory opinions"].) Our adherence to this rule is appropriate here because the factual record is inadequate to evaluate the People's argument. (See *People v. Guerra* (1984) 37 Cal.3d 385, 429 [208 Cal.Rptr. 162, 690 P.2d 635] [declining to render advisory opinion on question "that should be 'reserved until raised on an adequate record in an appropriate case' "].) Moreover, the People insisted at oral argument that remand for further development of the factual record would be improper. We therefore decline to consider either of these issues.

▇ As to the burglary offense charged in San Bernardino County, we reach a different conclusion regarding defendant's Sixth Amendment right to counsel. Under *Cobb* and *Blockburger*, that offense unquestionably was not the same as any of the offenses charged in Riverside County. Defendant was not charged with burglary in Riverside County, the burglary statute requires proof of facts the statutes underlying the charges in Riverside County do not, and the latter statutes require proof of facts the burglary statute does not. Indeed, in his supplemental brief addressing *Cobb*'s effect, defendant concedes that "[t]hese charges then fall outside the *Blockburger* test given the different elements that must be proven."

Despite this concession, defendant asserts that suppression of his statements is nevertheless constitutionally required as to the burglary charge. He argues that to "further the aim of the Sixth Amendment," we should adopt a "bright-line rule" that where, as here, "an offense is charged across two districts, the Sixth Amendment right should attach not only to the two offenses that are the 'same offense,' but also to all other offenses charged together." The "practical rationale" for this rule on the facts here is that it was "impossible" to discuss the burglary without also discussing "the precluded section 10851 violation." In defendant's view, *Cobb* does not require a contrary conclusion, because it "did not look at the effect of such an interrogation if at least one of the charged crimes was the same."

Unlike defendant, we find that *Cobb* requires rejection of his claim. As we have explained, the high court in *Cobb* emphasized that it "meant what it said" in *McNeil*: "the Sixth Amendment right [to counsel] is 'offense specific.' " (*Cobb, supra,* 532 U.S. at p. 164 [121 S.Ct. at p. 1339], citing

*McNeil, supra,* 501 U.S. 171.) The "bright-line rule" defendant proposes— that the Sixth Amendment right to counsel "attach[es] not only to" offenses that are the same offense, "but also to all other offenses charged together"—is flatly inconsistent with *Cobb*'s clear, emphatic, and unequivocal holding. It is also inconsistent with the high court's concern that expanding the "offense-specific nature of the Sixth Amendment right" to " 'exclude evidence pertaining to charges as to which the . . . right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at the time, would unnecessarily frustrate the public's interest in the investigation of criminal activities.' [Citation.]" (*Cobb, supra,* 532 U.S. at p. 171 [121 S.Ct. at p. 1342].) "[T]he Constitution does not negate society's interest in the ability of police to talk to witnesses and suspects, even those who have been charged with other offenses." (*Id.* at p. 172 [121 S.Ct. at p. 1343].) Finally, defendant's assertion that it was "impossible" to discuss the uncharged burglary without also discussing the charged section 10851 violation does not distinguish this case from *Cobb.* As the dissenting opinion in *Cobb* observed, it was "impossib[le]" to "question[] Cobb about [the uncharged murders] without eliciting admissions about" the charged burglary. (*Cobb, supra,* 532 U.S. 162, 188 [121 S.Ct. 1335, 1351] (dis. opn. of Breyer, J.).) Thus, *Cobb* requires us to reject defendant's claim that his Sixth Amendment right to counsel precluded police questioning about the burglary simply because that offense was charged with the section 10851 offense.

## DISPOSITION

The judgment of the Court of Appeal is reversed as to the burglary charge and affirmed as to the charge under section 10851, and the matter is remanded for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Lambden, J.,* concurred.

---

*Associate Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.